BRUNSWICK SAVINGS INSTITUTION

*vs.*

MARY W. CROSSMAN and others.

Androscoggin.     Opinion January 2, 1885.

*Real actions.   R. S., c. 104, § 16.   Deed.*

Where, pending a real action, the tenant dies and his heirs are summoned in under R. S., c. 104, § 16, the heirs are not restricted in their defence to the title of their ancestor, but may set up any title they have from any other source.

A particular description in a deed is not necessarily enlarged by a succeeding general description by way of reference to and adoption of the description of a former deed, even where the language is, that the grantor "intended to convey the same and identical real estate, conveyed by said" former deed. The real intent is to be gathered from the whole description, particular as well as general.

ON.REPORT.

Real action.   The opinion states the case and material facts.

*Weston Thompson*, for the plaintiff.

This action was brought against the mother and such of her children as were on the land at the time.   She died pending the suit and the six other defendants thereupon, became parties. One of these has been defaulted.   How does the case stand as to the other five?

If they had any title not derived by inheritance from their mother, they had no occasion or right to come into this suit to defend it.

No judgment obtained by us in this case would have barred such claims if they had not appeared.

Judgments conclude nobody except the parties and those in privity with them.   There would be no privity in a case where no right is claimed under a party to the judgment.   Consanguinity is not privity.   I do not lose my land because a man has judgment for it against my father, who never owned it.

These five came into the case of their own will and not by compulsion.   They were entitled to come in because they were heirs of their mother and as such heirs, and not otherwise. Their mother's death did not abate the old suit or make a new one, or bring any new title or interest or claim to the former.

These five defendants can claim nothing in this suit except by inheritance, as heirs of their mother; and they are subject to the same rules of estoppel that bound her.   They are in privity with her.

It would be intolerable, if, after much litigation and accumulation of cost in a real action wherein the demandant had and could show the better title, the tenant's death should let in parties to set up a new and never-questioned title, and throw all the cost

back on the plaintiff who had not contended against law, nor·· unrightously.

So if a new party, coming in as heir but denying that his· ancestor ever had a title, might claim some other title, and. thereby gain the advantage of possession with which he could win, and without which, he could not.

It is the claim of these defendants that their mother never had any heritable title, except the minute interests that she acquired. from the two daughters whom she survived ; and it cannot be· denied that those interests passed by the deeds to us irrespective· of estoppels.

The doctrine for which we contend, hurts nobody ; and with-· out it, as shown above, " offences must needs come."

This is a proper case for the operation of rules of estoppel.· It is a struggle between a demandant who has paid for the land, against tenants who have given nothing for it, and who rely on· a denial of testacy which they never made till some of them had got the value of the farm, and until loss of evidence seemed to· invite and offer impunity to their assertion of the new idea.

*N. and J. A. Morrill* and *A. R. Savage*, for the defendants.··

EMERY, J.   This real action was originally brought against the widow and three of the children of David Crossman, junior, deceased.   The widow died and her other six children and heirs· being also the children and heirs of David, were cited and appeared. in defence.   The action therefore is now against the children and. heirs of said David Crossman, junior, nine in number.   The· land demanded was formerly a part of the farm of David Cross-· man, senior, in Durham, which farm was at some time, as both. sides seem to admit, divided into two unequal parts, the eastern five-eighths parcel passing to David Crossman, junior, the western three-eighths parcel passing elsewhere.   The demand includes all of the "five-eighths" parcel, and part of the "three-eighths" parcel. The accompanying sketch will show the situation of the land and adjoining lands, as mentioned and referred to in the deeds. The sketch made by each counsel is similar.   The corners of the

demanded land are marked 1, 2, 3, 4.   The 12 rod strip was a part of the "three-eighths" parcel but is not demanded.

Plan referred to in the opinion, being that of David Crossman, Senior's, farm.

There is no controversy over the demandant's title, as against these defendants, to what he demands of the "three-eighths"

parcel, as all the defendants who are not defaulted have expressly disclaimed that, and all outside of the "five-eighths" parcel. We have need therefore, to examine only the title to the "five-eighths" parcel.

Ignoring for the present the demandant's claim of title, we will consider what is the interest of each defendant. Each one's title is as heir of David Crossman, jr., who died March 5, 1852, and intestate as claimed by the defendants. David left a widow and eleven children. Each child therefore inherited one-eleventh. Afterward one of the sisters died of age, unmarried, and intestate. As the mother and widow was co-heir of this deceased's interest, with the surviving brothers and sisters, there were still eleven heirs to this eleventh, and each of the children acquired $\frac{1}{11}$ of $\frac{1}{11}$ of the parcel, in addition to his original $\frac{1}{11}$. Another sister died later, of age, unmarried and intestate. There were then ten heirs to this deceased child's interest, and each of the nine surviving children acquired of the original estate through this child two fractions, $\frac{1}{10}$ of $\frac{1}{11}$ and also $\frac{1}{10}$ of $\frac{1}{11}$ of $\frac{1}{11}$, this last fraction having been inherited by the sister last deceased from the sister first deceased. The mother and widow conveyed her interest to Aaron in her life-time so that at her death nothing was inherited from her. The nine surviving children, the present nine defendants, therefore, acquired each an interest in the "five-eighths" parcel by inheritance from their father and two sisters deceased. The interest of each is as follows:

| | |
|---|---|
| From the father, one fraction, | $\frac{1}{11}$ |
| From the sister first deceased, one fraction, | $\frac{1}{11}$ of $\frac{1}{11}$ |
| From the sister last deceased, two fractions, | $\frac{1}{10}$ of $\frac{1}{11}$ |
| And | $\frac{1}{10}$ of $\frac{1}{11}$ of $\frac{1}{11}$ |

The sum of these various fractions is six fifty-fifths, so that at the time this case is presented to the court, each defendant *prima facie* had six fifty-fifths undivided of the "five-eighths" parcel in controversy.

What does the demandant show for a better title?

The demandant puts in two deeds as follows: 1, from Mary W. Crossman, (the widow of David, junior,) to Aaron T. Cross-

man, dated May 12, 1869.  2, from Aaron T. Crossman, to the demandant, dated March 2, 1872.  Both these deeds include the " five-eighths " parcel.  If Mary W. Crossman, the widow had a title, then by these deeds the demandant acquired the title. The demandant makes several claims of title under these deeds.

1. The demandant claims that Mary had title by devise under a last will of her husband, David Crossman, junior.  The probate records of Cumberland county, where said will, if any, should have been proved, have been destroyed by fire since the death of David, junior.  The only testimony offered as tending to prove that such a will was made and probated, was that of two of the children, Martha and Andrew, but their testimony only goes to the extent of their having heard some talk about the making of will.  There is no evidence that ever David spoke of having made a will — or that ever any one saw such a will — or what its terms were.  The fact that the widow lived on the farm after husband's death has little or no probative force, as to the making of a will in her favor.  The evidence produced is too faint to authorize the court to assume the making and probating a will.

2. The demandant claims that a title has been acquired by twenty years adverse possession by Mary and her grantees. The only testimony offered is that of the same two children, from which it appears that the widow lived on the place after her husband's death, up to the time of her conveyance and that some of the children usually lived with her.  Aaron lived there after the conveyance up to beginning of this suit.  Andrew testified that when he went there the other heirs promised to sign off to him if he would go there and take care of their mother.  There is no evidence that the widow denied the title of the children until 1869, and then only so far as may be inferred from her giving a warranty deed.  When told by Andrew that she had no right to give such a deed, she did not then claim such a right nor deny the title of the heirs.  There is nothing in the mere fact of the widow's continuing to live on her husband's farm to raise a presumption that her possession is adverse.  There is not sufficient evidence in this case of adverse possession.

3. The demandant claims that the heirs are estopped from now asserting title against the widow's grantee, on the ground that they permitted the conveyance to be made without objection. The answer is that none of the heirs, except the grantee, appear to have known such a deed was intended. The first knowledge they had of the deed was after the fact, hence there was no estoppel.

4. The demandant claims that the six heirs who were cited in after the death of their mother, cannot set up their own title, but can defend only on their mother's title. By the common law, the death of the mother would have abated the demandant's action, so far as she was concerned, and he would have been obliged to begin a new action against the heirs, if he wished to recover a valid judgment. In such new action the question would have been, which had the better title, the demandant or the new defendants? The new defendants in such new action could have asserted every title they possessed. The statute authorizes the demandant to save his former suit by changing it into a suit against new defendants, but the statute does not abridge the rights of the new defendants. They have all the rights they would have had if sued in the first instance. Their plea is that they did not disseize, not that their mother did not disseize. That plea the demandant has joined, and in support of it the defendants must be allowed to set up any title they have.

The demandant, however, claims that, whatever may be the result of his claim above made, he has acquired under his deed from Aaron, the share of Gustavus, or six fifty-fifths, Gustavus being one of the nine defendants. To show this the demandant puts in a warranty deed from Gustavus to Andrew, dated October 3, 1867, and recorded in the Androscoggin registry, in vol. 49, folio 391, and a warranty deed from Andrew to Aaron (the demandant's immediate grantor) dated July 10, 1869, and recorded vol. 59, folio 3. The description in the deed from Gustavus to Andrew is as follows : "Three undivided eighths of the real estate formerly owned by David Crossman, senior, late of Durham, and bounded as follows, viz : Easterly by land now in possession of Joshua L. Douglass, Gustavus C. Crossman

and Jesse Crossman, second; southwesterly by James Booker; northwesterly by Jesse Crossman; northeasterly by the Androscoggin river, containing one hundred acres, more or less." This description the demandant contends, is not of the western "three-eighths" parcel, but includes three-eighths undivided of the entire original farm, and hence includes three-eighths of the "five-eighths" parcel in controversy, and that the deed therefore vested in Andrew all the interest of Gustavus in the "five-eighths" parcel, not exceeding three-eighths. If that be so, and if Andrew conveyed the same interest to Aaron, in his deed, then by the deed from Aaron before cited, the demandant would acquire Gustavus' interest.

Waiving for the present the construction of the deed from Gustavus to Andrew, we will consider the description in the deed from Andrew to Aaron, July 10, 1869. That description is as follows: "A certain parcel of land situated," &c. and bounded and described as follows: "Beginning at the Androscoggin river, at the northeast corner of the land of Aaron T. Crossman; thence southerly on the land of Aaron T. Crossman, aforesaid, to the land of Merrill; thence westerly on the line of said Merrill's land to land of George Crossman; thence northerly to the Androscoggin river, and from thence to the place begun at. Intending to convey the same and identical real estate conveyed to me by one Gustavus C. Crossman by his deed of warranty, dated October 3, 1867, and recorded in the Androscoggin registry of deeds in book 49, page 391. Excepting a strip twelve rods in width and the entire on the westerly side conveyed by me to George Crossman."

Comparing the description with the plan it will be seen that the call for "the north-*east* corner of land of Aaron T. Crossman" is inconsistent with the other calls. It will be remembered that Aaron previously had a deed from Mary of the "five-eighths parcel." The case also shows that George had a deed of the twelve rod strip. Rejecting this inconsistent call, enough remains to make a clear, consistent, and complete description. "Beginning at the Androscoggin river; thence southerly on the land of Aaron T. Crossman,"etc. The first specific description by metes and bounds

and by courses, evidently does not include any part of the " five-eighths " parcel. It only includes a strip in severalty between the land of George Crossman and land of Aaron T. Crossman. The general description, however, inserted immediately afterward, expressly refers to the real estate conveyed to Andrew by Gustavus, as the land intended to be conveyed in the deed from Andrew. It is not contended that two parcels were intended to be conveyed. The whole description only applies to one parcel. The demandant claims that the general description controls the specific, and that hence the deed conveys *all* that was conveyed by the deed referred to.

There are cases in which such general references to a prior deed have been held to limit, a prior specific description. No case has been cited to us, in which such general reference to a prior deed has been held to enlarge a prior specific description. We do not think such a general reference to a prior deed whether as indicating the source of title, or as matter of description, necessarily controls a prior specific description by metes and bounds. *Lovejoy* v. *Lovett*, 124 Mass. 270. Much less do we think the effect is to enlarge such a description. After all, the simple question is, what does the whole description show was actually intended to be conveyed? After reading the deed and looking at the plan and the circumstances, what is the impression left on the mind as to the grantor's intention? If he intended to convey three-eighths undivided of the "five-eighths parcel," why did he so carefully describe a strip in severalty which was no part of the "five-eighths parcel?" Again he excludes out of his general description, which is claimed to be an undivided interest, a strip *in severalty*, twelve rods wide on the western side. He may not have thought his deed from Gustavus was capable of the construction contended for, by demandant. Upon the whole, we think that Andrew only intended to convey to Aaron, a strip in severalty lying between the land of George Crossman, and the land conveyed by Mary to Aaron. Aaron, therefore, took none of the "five-eighths parcel" under this deed, and the demandant took none. It does not matter whether Gustavus conveyed away any of his interest in the "five-eighths parcel," if that interest did not pass to the

demandant.   The demandant must recover on the strength of his own title, and not on the weakness of the defendant's title.

The conclusion is, that the demandant has acquired all the interest of the widow, Mary, now deceased, and of the defendant, Aaron, who is defaulted, and the demandant is entitled to judgment against Aaron for the demanded premises.   But the demandant has not acquired any part of the six fifty-fifths of either of the other defendants.   The eight defendants have each seasonably and properly disclaimed all of the demanded premises out of his six fifty-fifths of the "five-eighths parcel."   It appears that at the commencement of the action none of these eight were in possession, or claiming any part of the premises so disclaimed.

> *Judgment for demandant for the "three-eighths parcel," and for seven fifty-fifths undivided of the "five-eighths parcel;" and additional judgment for demandant against Aaron T. Crossman for costs.*
>
> *Judgment for the other eight defendants against demandant for costs.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.